AO 106 (Rev. 04/10) Application for a Search Warrant

**FILED**

# UNITED STATES DISTRICT COURT

### for the

### Eastern District of Virginia

AUG 1 8 2022

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br><br>THE ITEMS LISTED IN ATTACHMENT A LOCATED AT<br>THE FBI NORFOLK OFFICE | )<br>)<br>)<br>)<br>)<br>) |

**UNDER SEAL**

Case No. 2:22sw **133**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ Eastern _____ District of _____ Virginia _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2251(a)/2252(a)(2) | Production/Receipt of Child Pornography |
| 18 U.S.C. § 2422(b) | Online Coercion and Enticement of a Minor |
| 18 U.S.C. § 2423(a)/2423(b) | Transportation of Minor for Criminal Sexual Activity/Travel to Engage in Illicit Sexual Conduct |

The application is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA/SAUSA

_____
Elizabeth M. Yusi, AUSA

Sworn to before me and signed in my presence.

_____
*Applicant's signature*

Justin Terry, Special Agent, FBI
*Printed name and title*

Date: _____08/18/2022_____

City and state: Norfolk, VA

_____
*Judge's signature*

Lawrence R. Leonard, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

## DESCRIPTION OF THE ITEMS TO BE SEARCHED

**One (1) Motorola cell phone, one (1) Nintendo Switch with red and blue controllers, one (1) Samsung chrome laptop, one (1) Nintendo Switch with no controllers, and one (1) Playstation 4** , that were seized at 1204 North 91st Avenue, Tolleson, Arizona, on August 14, 2022, and now located in evidence at the FBI's Norfolk office.

# ATTACHMENT B

**Items to Be Seized.** The following materials, which constitute evidence of the commission of a criminal offense, contraband, the fruits of crime, or property designed or intended for use or which is or has been used as the means of committing a criminal offense, namely violations of 18 U.S.C. §§ 2251(a), 2252(a)(2), 2422(b), 2423(a), and 2423(b):

- evidence of who used, owned, or controlled the SUBJECT DEVICES at the time the things described in this warrant were created, edited, or deleted, such as notes logs, registry entries, configuration files, saved user names and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;
- evidence of software that would allow others to control the cellular phone, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;
- evidence of the lack of such malicious software;
- evidence indicating how and when the SUBJECT DEVICES were accessed or used to determine the chronological context of access, use, and events relating to the crime(s) under investigation and to the user of the SUBJECT DEVICES;
- evidence indicating the user's knowledge and/or intent as it relates to the crime(s) under investigation;
- evidence of the attachment to the cellular phone of other storage devices or similar containers for electronic evidence;
- evidence of programs (and associated data) that are designed to eliminate data from the cellular phone;
- evidence of the times the cellular phone was used;
- passwords, encryption keys, and other access devices that may be necessary to access the cellular phone;
- records of or information about Internet Protocol addresses used by the cellular phone;
- records of or information about the cellular phone's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses; and
- contextual information necessary to understand the evidence described in this attachment.
- Child pornography, as defined in 18 U.S.C. § 2256(8), visual depictions of minors engaging in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2), and child erotica.
- Records, information, and items relating to violations of the statutes described above including:
- Records, information, and items relating to the ownership or use of the SUBJECT DEVICES

- Records and information relating to the identity or location of the persons suspected of violating the statutes described above;
- Records and information relating to sexual exploitation of children, including correspondence and communications between users of child pornography and exploitation websites.

This warrant authorizes a review of electronically stored information, communications, other records and information identified pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the identified electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**IN THE MATTER OF THE SEARCH OF:**                                    **UNDER SEAL**

| | |
|---|---|
| One (1) Motorola Cell Phone (DEVICE 1) | ) |
| | ) |
| One (1) Nintendo Switch with Red and Blue Controllers | ) |
| (DEVICE 2) | ) |
| | ) |
| One (1) Samsung Chrome Laptop (DEVICE 3) | ) |
| | ) |
| One (1) Nintendo Switch with No Controllers (DEVICE 4) | ) |
| | ) |
| One (1) Playstation 4 (DEVICE 5) | |

Case No. 2:22sw*133*

**AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANTS**

**Introduction and Agent Background**

I, Justin Terry, being duly sworn, hereby depose and state:

1.      I am a Special Agent with the United States Department of Justice, Federal
Bureau of Investigation (FBI).  I have been employed by the FBI as a Special Agent since
January 2017.  As such, I am an "investigative or law enforcement officer of the United States"
within the meaning of Title 18, United States Code, § 2510(7).  That is, I am an officer of the
United States, who is empowered by law to conduct investigations regarding violations of United
States law, to execute warrants issued under the authority of the United States, and to make
arrests of the offenses enumerated in Title 18, United States Code, § 2251, *et. seq.*  In the course
of my duties, I am responsible for investigating crimes which include, but are not limited to,
child exploitation and child pornography.  I have previously been involved in criminal
investigations concerning violations of federal laws.  Since joining the FBI, your affiant has
received specialized training in kidnapping and violent crimes against children investigations.

2.      This affidavit is made in support of an application for a warrant to search the
SUBJECT DEVICES, a  Motorola Cell Phone (hereinafter referred to as "DEVICE 1"), a

Nintendo Switch with Red and Blue Controllers (hereinafter referred to as "DEVICE 2"), a Samsung Chrome Laptop (hereinafter referred to as "DEVICE 3"), a Nintendo Switch with No Controllers (hereinafter referred to as "DEVICE 4"), and a Playstation 4 (hereinafter referred to as "DEVICE 5") seized at 1204 North 91st Avenue, Tolleson, Arizona, on August 14, 2022. The apartment located at 1204 North 91st Avenue, Apartment 10903, Tolleson, Arizona, was a domicile inhabited and maintained by Ethan ROBERTS, who is 28 years old. The SUBJECT DEVICES were transferred to the FBI Norfolk Field Office on August 15, 2022. The SUBJECT DEVICES are more precisely described in Attachment A, and the items to be searched for are specified in Attachment B.

3.     This affidavit is based upon information that I have gained from my investigation, my training and experience, as well as information gained from conversations with other law enforcement officers. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities (more precisely described in Attachment B) of violations 18 U.S.C. §§ 2251(a), 2252(a)(2), 2422(b), 2423(a), and 2423(b) are located in the SUBJECT DEVICES.

**Pertinent Federal Criminal Statutes**

4.     18 U.S.C. § 2251(a) makes it a crime for any person to employ, use, persuade, induce, entice, or coerce any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in or affecting interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or

2

for the purpose of transmitting a live visual depiction of such conduct, if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.

5.    18 U.S.C. § 2252(a)(2) prohibits a person from knowingly receiving or distributing, using any means or facility of interstate or foreign commerce or that has been mailed, shipped or transported in or affecting interstate or foreign commerce, or which contains materials which have been mailed, shipped or transported, by any means including by computer, or knowingly reproduces any visual depiction for distribution using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or through the mails, any visual depiction of minors engaging in sexually explicit conduct.

6.    18 U.S.C. § 2422(b) prohibits a person from, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense.

7.    18 U.S.C. § 2423(a) prohibits a person from knowingly transporting an individual who has not attained the age of 18 years in interstate or foreign commerce, or in any commonwealth, territory or possession of the United States, with intent that the individual

3

engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense.

8.     18 U.S.C. § 2423(b) prohibits a person from knowingly travelling in interstate commerce or travels into the United States, or a United States citizen or an alien admitted for permanent residence in the United States who travels in foreign commerce, with a motivating purpose of engaging in any illicit sexual conduct with another person.

### Definitions

9.     "Child erotica," as used herein, means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not necessarily obscene or do not necessarily depict minors in sexually explicit poses or positions.

10.     "Child pornography," as defined in 18 U.S.C. § 2256(8), is any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct.

11.     "Computer," as used herein, refers to "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device," and includes smartphones, and mobile phones and devices.  See 18 U.S.C. § 1030(e)(1).

12.     "Computer hardware," as used herein, consists of all equipment that can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic,

or similar computer impulses or data.  Computer hardware includes any data-processing devices (including central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices); peripheral input/output devices (including keyboards, printers, video display monitors, and related communications devices such as cables and connections); as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including physical keys and locks).

13.     "Computer passwords and data security devices," as used herein, consist of information or items designed to restrict access to or hide computer software, documentation, or data.  Data security devices may consist of hardware, software, or other programming code.  A password (a string of alphanumeric characters) usually operates what might be termed a digital key to "unlock" particular data security devices.  Data security hardware may include encryption devices, chips, and circuit boards.  Data security software of digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched.  Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the process to restore it.

14.     "Contents," when used with respect to any wire, oral, or electronic communication, includes any information concerning the substance, purport, or meaning of that communication.  18 U.S.C. § 2510(8).

15.     "Electronic Communication Service" refers to any service, which provides to users thereof the ability to send or receive wire or electronic communications.  18 U.S.C. § 2510(15).

5

16. "Electronic storage" means (a) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and (b) any storage of such communication by an electronic communication service for purposes of backup protection of such communication. 18 U.S.C. § 2510(17).

17. "Internet Service Providers" (ISPs), as used herein, are commercial organizations that are in business to provide individuals and businesses access to the Internet. ISPs provide a range of functions for their customers including access to the Internet, web hosting, e-mail, remote storage, and co-location of computers and other communications equipment.

18. "Internet Protocol Address" (IP Address), as used herein, refers to a unique number used by a computer or other digital device to access the Internet. IP addresses can be "dynamic," meaning that the ISP assigns a different unique number to a computer every time it accesses the Internet. IP addresses might also be "static," if an ISP assigns a user's computer a particular IP address that is used each time the computer accesses the Internet.

19. "Minor" and "sexually explicit conduct" are defined in 18 U.S.C. §§ 2256(1) and (2). A "minor" is defined as "any person under the age of eighteen years." The term "sexually explicit conduct" means actual or simulated:

    a.    Sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;
    b.    Bestiality;
    c.    Masturbation;
    d.    Sadistic or masochistic abuse; or
    e.    Lascivious exhibition of the genitals or pubic area of any person.

20. "Records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade, photographic, mechanical, electrical, electronic, or magnetic form.

21.    "Remote Computing Service" is a service that provides to the public computer storage or processing services by means of an "electronic communications system." 18 U.S.C. § 2711.

22.    "Secure Hash Algorithm" (SHA-1) is one of a number of cryptographic hash functions published by the National Institute of Standards and Technology as a U.S. Federal Information Processing Standard. SHA-1 is the original 160-bit hash function. It was designed by the National Security Agency (NSA) to be part of the Digital Signature Algorithm. The SHA-1 value is one form of an electronic fingerprint for a digital image.

23.    "Visual depiction," as defined in 18 U.S.C. § 2256(5), includes undeveloped film and videotape, data stored on computer disc or other electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

24.    "Web hosts" provide the equipment and services required to host and maintain files for one or more websites and to provide rapid Internet connections to those websites. Most hosting is "shared," which means that multiple websites of unrelated companies are on the same server in order to reduce associated costs. When a client develops a Website, the client needs a server and perhaps a web hosting company to host it. "Dedicated hosting," means that the web hosting company provides all of the equipment and assumes all of the responsibility for technical support and maintenance of a website. "Co-location" means a server is located at a dedicated hosting facility designed with special resources, such as a secure cage, regulated power, a dedicated Internet connection, online security and online technical support. Co-location facilities offer customers a secure place to physically house the customers' hardware and equipment as

7

opposed to keeping it in their offices or warehouse, where the potential for fire, theft or vandalism is greater.

## PROBABLE CAUSE

25.     On August 8, 2022, the Norfolk Police Department (NPD) was contacted by family members who advised officers that they had not seen their 15-year-old daughter, hereinafter referred to as JANE DOE, since August 3, 2022.  The investigation revealed that JANE DOE was last seen by family and friends on August 3, 2022.

26.     JANE DOE's mother stated to NPD officers that JANE DOE was risk adverse, very introverted, and did not leave the residence unless it was to take short walks with her brother or to stay at a friend's house in Virginia Beach, Virginia.  It was not unusual for JANE DOE to stay in her room for long periods of time, only leaving to use the restroom and obtain food.  JANE DOE's mother stated that JANE DOE did not go to school because of social anxiety due to bullying.  JANE DOE was known by friends and family to be very active on the Internet and to communicate with numerous unknown individuals online across multiple social media platforms.

27.     Investigators conducted interviews with members of JANE DOE's family and with her friends.  It was determined that none of the interviewed parties had been able to make positive contact in person or electronically with JANE DOE since August 3, 2022.

28.     JANE DOE had no history of running away.  There were no recent fights or arguments with family members or friends, nor any other known negative incident that could be an explanation for JANE DOE voluntarily leaving.  Friends and family members reported to investigators that JANE DOE was in good spirits recently and had been making future plans to spend time with friends to celebrate one of the friend's birthdays.

8

29.     JANE DOE was a prolific user of social media, and law enforcement obtained exigent requests to review the logins records and associated IP Addresses used to access various accounts associated with JANE DOE.  Legal processes were also obtained to review content from JANE DOE's social media accounts.  In total, approximately 20 social media accounts were reviewed for activity.  No account activity was located that could be attributed to being used by JANE DOE after August 3, 2022.

30.     JANE DOE's friends and family reported that JANE DOE had been secretive recently about an individual that she had been talking to on an electronic messaging platform. JANE DOE's friends believed that the platform was Snapchat, however, the friends that observed this activity believed that JANE DOE was using a newly-created Snapchat user account to communicate with this individual because the notification tone was different than her usual notification tone.  On multiple occasions, JANE DOE would receive a notification tone from this individual on her phone and walk into another room to respond without her friends nearby.

31.     Upon searching JANE DOE's bedroom, JANE DOE's family determined that her cellular phone and Nintendo Switch gaming system were both missing.  JANE DOE's Nintendo Switch charger was also missing from the residence.

32.     Prior to JANE DOE's disappearance, JANE DOE utilized the online features of the Nintendo Switch, called Nintendo Switch Online, which allowed her to play games with other players over the Internet and to add other Nintendo Switch player accounts as "friends". On August 8, 2022, approximately five days after JANE DOE's disappearance, one of JANE DOE's friends observed account activity on JANE DOE's Nintendo Switch Online account. This activity showed that JANE DOE's Nintendo Switch had utilized the YouTube application for approximately five hours sometime between August 8, 2022, and August 9, 2022.

Additionally, an individual with control of JANE DOE's Nintendo Switch Online account changed the user account icon, account nickname, and "unfriended" the Nintendo account belonging to JANE DOE's friend.

33.    On August 12, 2022, a friend of JANE DOE that could still see JANE DOE's Nintendo Switch Online account saw that JANE DOE's account logged 25 additional hours of time on YouTube and had downloaded a new game, Little Nightmares, that JANE DOE had previously said she wanted.

34.    On August 12, 2022, data received from Nintendo pursuant to an exigent request indicated that JANE DOE's Nintendo Switch had recently connected to Wifi access point utilizing a public SSID named "Residence-Tolleson-Cox".

35.    An exigent request was made to Cox Communications for account information associated with the MAC address of the router that JANE DOE's Nintendo Switch connected to.

36.    Additional data was obtained from Nintendo that indicated that JANE DOE's Nintendo Switch had consistently connected to her home Wifi network in Norfolk, VA until August 3, 2022. The Switch was then offline until August 6, 2022, when the Switch went back online and began accessing the Internet using IP address 24.120.111.230.

37.    Cox Communications was provided with this IP address and returned the following subscriber information for 24.120.111.230: Siegel Suites Tolleson, 1204 N 91st Ave, Tolleson, AZ 85353.

38.    On August 14, 2022, FBI agents observed a white male subject enter Apartment 10903 at Siegel Suites Tolleson, a location believed by agents to possibly be the location where JANE DOE was located. Police Officers from the Tolleson Police Department conducted a

welfare check at Apartment 10903 and located JANE DOE inside of the apartment with Ethan ROBERTS.

39.     On August 16, 2022, JANE DOE was interviewed by a FBI Child Adolescent Forensic Interviewer.  JANE DOE disclosed that she met ROBERTS in January 2022, when she was 14 years old, on Omegle, an online chatting platform.  JANE DOE informed ROBERTS she was 14 years old. After a couple days of talking the two began utilizing SnapChat and Discord, two additional online applications utilized for communication.

40.     During the approximately seven months of online commination, JANE DOE sent sending explicit images, including of her vaginal area, to ROBERTS at his request.  ROBERTS sent nude images of himself to JANE DOE.

41.     After seven months of communication, ROBERTS bought a Greyhound bus ticket from Phoenix, Arizona to Norfolk, Virginia.  ROBERTS arrived in Norfolk on August 3, 2022 and met JANE DOE in person.  ROBERTS and JANE DOE engaged in oral sex while in Norfolk.

42.     On August 4, 2022, ROBERTS and JANE DOE took a Greyhound bus from Norfolk, Virginia, to Phoenix, Arizona.  ROBERTS reportedly utilized "Lyft", a commonly used transportation application, to book a ride from the bus station to his apartment.  ROBERTS and JANE DOE engaged in sexual acts while in Arizona.

43.     JANE DOE disclosed that sometime between August 6, 2022, and August 14, 2022, ROBERTS instructed JANE DOE to meet individuals online using Omegle and sell nude images of herself to them via SnapChat.  Electronic devices located inside of ROBERTS' apartment were used to capture these photographs and disseminate them to other individuals.

44.     The SUBJECT DEVICES were transported to FBI Norfolk and were received on or about August 15, 2022.  They were placed into evidence at FBI's Norfolk Field Office.

## CONCLUSION

45.     Based on the facts set forth above, I believe probable cause exists that Ethan ROBERTS has violated 18 U.S.C. §§ 2251(a), 2252(a)(2), 2422(b), 2423(a), and 2423(b).

46.     Based on the facts set forth above, I further submit that probable cause exists to believe that evidence, fruits, and instrumentalities (more precisely described in Attachment B) of such criminal violations will be found within the SUBJECT DEVICES (more precisely described in Attachment A).

47.     Accordingly, I request that a warrant be issued authorizing your affiant, with assistance from additional FBI agents and other law enforcement personnel, to search the SUBJECT DEVICES described in Attachment A, for the items specified in Attachment B.

FURTHER AFFIANT SAYETH NOT.

Justin Terry
Special Agent
Federal Bureau of Investigation
Norfolk, Virginia

Subscribed and sworn before me this 18th day of August, 2022, in the City of Norfolk, Virginia.

UNITED STATES MAGISTRATE JUDGE